Jose Garay (SBN 200494)
jose@garaylaw.com
**JOSE GARAY, APLC**
249 E. Ocean Blvd., Suite 814
Long Beach, CA 90802
Telephone: (949) 208-3400
Facsimile: (562) 590-8400

Scott Ernest Wheeler (SBN 187998)
**THE WHEELER LAW FIRM**
250 West First Street, Suite 216
Claremont, CA 91711
Telephone: (909) 621-4988
Email: sew@scottwheelerlawoffice.com

Attorneys for Plaintiff IRENE MONGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IRENE MONGE, individually, on behalf of Aggrieved Employees and the State of Californian as Private Attorney General,<br><br>Plaintiff,<br><br>vs.<br><br>WALMART INC., AND DOES 1 TO 50,<br><br>Defendants. | Case No. 2:25-cv-01232-JFW(SKx)<br><br>Assigned to the Hon. John F. Walter, Courtroom 7A<br><br>**FIRST AMENDED PAGA COMPLAINT FOR ENFORCEMENT OF THE PRIVATE ATTORNEYS GENERAL ACT OF 2004**<br><br>Action Filed: December 20, 2024<br>Removal Date: February 12, 2025 |

-1-

Plaintiff, IRENE MONGE, (hereinafter, "Plaintiff"), individually, on behalf of Aggrieved Employees and the State of Californian as Private Attorney General, bring this PAGA Complaint ("Complaint") against defendant, Walmart Inc., and alleges as follows:

## INTRODUCTION

1. This is a PAGA complaint brought on behalf of Plaintiff and the Aggrieved Employees she seeks to represent ("Aggrieved Employees"). The Aggrieved Employees consists of all current and former non-exempt employees employed by Defendants in the State of California during the one (1) year prior to the filing of the complaint.

2. At all relevant times herein, Defendants have consistently maintained and enforced against Plaintiff and Aggrieved Employees the unlawful practices and policies set forth herein.

3. Plaintiff seeks injunctive and monetary relief against Defendants on behalf of herself and the putative Aggrieved Employees to recover, among other things, attorneys' fees, costs, and penalties pursuant to Labor Code sections 2100-2112 and 2699 *et. seq.*

## PARTIES

4. Plaintiff Irene MONGE is a California citizen and resides in CENTRAL DISTRICT OF CALIFORNIA. Defendants employed Plaintiff as a non-exempt, hourly warehouse employee during the PAGA Liability Period. Plaintiff Irene MONGE is a covered employee pursuant to Labor Code §§ 2100 – 2112.

5. Defendant Walmart Inc., incorporated in Delaware and is doing business throughout California. Walmart Inc. conducts business throughout California, including in CENTRAL DISTRICT OF CALIFORNIA, among other counties and cities throughout California. Walmart Inc. owns and operates logistics, delivery, warehouse, and servicing centers throughout California, including warehouse facilities in CENTRAL DISTRICT OF CALIFORNIA and is a covered employer

1 pursuant to Labor Code §§ 2100 *et seq.*

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, section 10 and Code of Civil Procedure section 410.10. All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

7. This Court has personal jurisdiction over Defendants because Walmart Inc. maintains operates and manages facilities in California and Defendants have sufficient minimum contacts in CENTRAL DISTRICT OF CALIFORNIA, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the CENTRAL DISTRICT OF CALIFORNIA consistent with traditional notions of fair play and substantial justice.

8. The CENTRAL DISTRICT does not have has jurisdiction in this matter because the individual claims are under the seventy-five thousand dollar ($75,000.00) individual jurisdictional threshold and the five million dollar ($5,000,000.00) aggregate jurisdictional threshold for federal court diversity jurisdiction. Further, there is no federal question at issue as the issues herein are based solely on the California Labor Code, Industrial Welfare Commission Wage Orders, Code of Civil Procedure and Rules of Court. Thus, the State of California, CENTRAL DISTRICT OF CALIFORNIA Superior Court maintains the appropriate jurisdiction to hear this matter.

## ARBITRATION

9. Plaintiff and Aggrieved Employees' claims as alleged herein are not subject to arbitration agreements. PAGA or Aggrieved Employees Action claims waivers are not enforceable against employees engaged in interstate commerce as transportation workers. Defendants' arbitration agreement, if any, does not apply to this matter for the following reasons: 1) Plaintiff falls with the Transportation Workers Exemption and the FAA does not apply, and 2) Plaintiff' PAGA claims for

-3-
FIRST AMENDED PAGA COMPLAINT                                    *WALMART*

civil penalties are not Covered Claims under Defendants' Arbitration Agreement, and 3) as the FAA does not apply to the parties, Defendants' agreement is unenforceable should it exist.

10. Although the FAA applies broadly and requires enforcement of certain arbitration agreements according to their terms, under the transportation worker exemption, "contracts of employment with seamen, railroad employees, or any other Aggrieved Employees of workers engaged in foreign or interstate commerce" are exempt from the FAA. 9 U.S.C. § 1; *Ortiz v. Randstad InHouse Services, LLC* (9th Cir. 2024) 95 F.4th 1152. The U.S. Supreme Court recently addressed the transportation workers exemption in *Southwest Airlines Co. v. Saxon* (2022), 596 U.S. 450, 456. The U.S. Supreme Court engaged in a two-step analysis to determine whether an employee qualified under the transportation workers exemption. *Id*. at 455-459. First, the Court "defined the relevant Aggrieved Employees of workers. *Id*. at 455. Second, the Court then "determine whether that Aggrieved Employees of workers is 'engaged in foreign or interstate commerce.'" *Id*.

11. In this case, Plaintiff and putative Aggrieved Employees were and are of the Aggrieved Employees of workers that engaged in foreign or interstate commerce. Plaintiff performed an essential function, detailed below, at Defendants' distribution centers, logistic facilities, fulfillment centers, and/or warehouses in CENTRAL DISTRICT OF CALIFORNIA. Defendants ship products to locations throughout the country which arrive from destinations nationally and internationally. Plaintiff and/or Aggrieved Employees were responsible for tasks and duties essential to Defendants' business of moving products and goods throughout the county.

12. Plaintiff and Aggrieved Employees worked at the Defendants' warehouse locations, which necessarily received and shipped goods and products, through both foreign and interstate streams of commerce. Plaintiff and putative Aggrieved Employees were and are a Aggrieved Employees of workers who "played a direct and 'necessary role in the free flow of goods' across borders" and "actively

-4-
FIRST AMENDED PAGA COMPLAINT                                    WALMART

engaged in transportation'" of such goods. *Saxon*, 596 U.S. at 458 (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001). In this case, the relevant goods and products were still moving in interstate commerce when Plaintiff and putative Aggrieved Employees interacted with them, and Plaintiff played a necessary part in facilitating their continued movement.

13. As Plaintiff were "actively engaged" and "intimately involved with" the interstate commerce of goods and products, Plaintiff is an exempt transportation worker under the FAA. As such, the FAA does not apply to the arbitration agreement, if one exists.

## AGGRIEVED EMPLOYEES ALLEGATIONS

14. Plaintiff brings this Aggrieved Employees action pursuant to Laobr Code § 2699 *et. seq.* during the PAGA Liability Period.

15. Plaintiff's and Aggrieved Employees' job duties, at Walmart Inc. included a sundry of warehouse duties subject to production targets and quotas. Under Defendants' quotas, Plaintiff and putative Aggrieved Employees are assigned or required to perform at a specified productivity speed, or perform a quantified number of tasks, or to handle or produce a quantified amount of material, within a defined time period and under which employees suffer adverse employment actions if they fail to complete the performance standard established by Walmart Inc.

16. Plaintiff is informed and believes, and thereon alleges that at all times hereinafter mentioned, Defendants were and are subject to the Labor Code §§ 2100 *et. seq.*

17. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants directly or indirectly, through agents or other persons or entities, employed or otherwise exercised control over the wages, hours, and working conditions of Plaintiff and the Aggrieved Employees

18. Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, the

Defendants, acting as the agent, alter ego, agent, servant, joint ventures, co-conspirator, and/or partner for the other, within a common enterprise and legal authority to act on the other's behalf.

19. At all relevant times, Defendants, and each of them, acted within the scope of such agency or employment, or ratified each and every act or omission complained of herein. At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

20. Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, and/or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

21. **Public Policy Considerations:** Employers in the State of California violate employment and labor laws every day. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing actions because they believe their former employers might damage their future endeavors through negative references and/or other means. Aggrieved Employees actions provide Aggrieved Employees who are not named in the complaint with a type of anonymity that allows for the vindication of their rights while affording them privacy protections.

22. The quota laws clearly state that *"… an employee cannot be required to meet a quota that prevents compliance with meal or rest breaks, use of bathroom facilities (including reasonable travel time to and from bathrooms), or compliance with occupational health and safety standards. A quota that prevents compliance with meal or rest breaks, use of bathroom facilities, including reasonable travel time to and from bathroom facilities, or occupational health and safety laws in the Labor Code or division standards is unlawful and may not be the basis for an adverse employment action.* ***A quota may be illegal if it directly or indirectly precludes employees from exercising these statutory rights. For example, a quota that***

****requires that employees always be engaged in productive activity during work hours would be unlawful as it would directly prevent employees from taking meal and rest periods and prevent them from using bathroom facilities during work hours or exercising their rights regarding health and safety standards.*** *Similarly, a quota may not be so high that if an employee takes meal and rest breaks, goes to the bathroom, or attempts to exercise their rights under occupational health and safety standards, they will fail to meet the quota. Such a quota indirectly precludes an employee from exercising these statutory rights and is also unlawful. An employer cannot take adverse employment action against an employee for failing to meet an unlawful quota or a quota that has not been disclosed to the employee.*" *See* Lab. Code § 2102; *see* Lab. Code § 2103; *see* DLSE FAQ summary and description of California's quota laws at https://www.dir.ca.gov/dlse/FAQ_warehousequotas.htm.

23. **California Quota Laws: Labor Code §§ 2100 – 2112:** Defendants have willfully and intentionally violated, among other claims, California's warehouse workers and quota laws as alleged below.

24. **Defendants Failed to Disclose Quotas & Enforces Silent Quotas Which Have Not Been Disclosed:** Starting January 1, 2022, Defendants were required to provide each new hire a written description of each quota the Defendants required Plaintiff and Putative Aggrieved Employees to work under. This includes the number of tasks to be performed or materials that must be produced or handled within a time period, and any potential adverse employment action that could result from failing to meet quotas as defined by Labor Code 2100 *et. seq.*

25. Plaintiff and Putative Aggrieved Employees routinely worked more than twelve hours in Defendants' warehouses and logistics centers throughout California and strictly enforced its unlawful quotas. Defendants knew they had a duty to disclose written quotas in compliance with California's quota laws and failed to comply with its legal duty despite the advice of its legal counsel. Defendants implemented silent quota wherein if the quota changed daily, weekly, monthly or

seasonally, Plaintiff and warehouse employees were not advised as required the quota laws.  On information and belief, Defendants monitored and tracked and could predict quota requirements based on historical data.  As such, Defendants could but chose not to adjust labor and/or quotas to match predictable order flow.   Plaintiff and  warehouse employees were constantly reprimanded if they were behind or perceived to be behind on a quota that had not been disclosed to them. They were frequently told to stay busy.

26. Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known they imposed systematic quota and production demands on Plaintiff and Putative Aggrieved Employees which violated the rights of employees pursuant to Labor Code sections 2100 et. seq. DEFENDANTS knows and has known at all times herein referenced that it requires and required Plaintiff and Putative Aggrieved Employees "…*to meet a quota that prevents compliance with meal or rest breaks, use of bathroom facilities, including reasonable travel time to and from bathroom facilities, or occupational health and safety laws in the Labor Code or division standards*" in violation of *Labor* Code 2102.

27. **Illegal Quotas Created Safety/OSHA Risks and/or Increased Injury Rates:** On information and belief, hundreds of employees have suffered quota related injuries since January 1, 2022.  On information and belief, DEFENDANTS' unwritten policy, which is implemented through supervisors and managers, is to eliminate injured employees. While DEFENDANTS sometimes offers light duty positions and tasks the reality is injured employees were targeted for elimination for one well known reason:  the perception and false belief that injured employees could not meet Defendants' illegal quotas.  Ultimately, injured employees are categorized as unproductive employees and are terminated for "low performance."

28. Plaintiff was directly adversely impacted by Defendants unlawful quotas. Plaintiff is afflicted with vertigo and if she was assigned to work at higher levels Plaintiff could fall and injure herself and others.  Defendants took no action to

ensure her safety and other warehouse employees, Plaintiff warned her supervisor about her condition. She was assigned tasks requiring her to work in elevated areas and Plaintiff fell. Plaintiff requested work assignment at lower levels and floors, but she was not allowed. As a result of her worsening condition directly related to work assignments exposing her injury, she would sick days.

29. DEFENDANTS willfully, knowingly and intentionally failed to establish quotas that did not harm Plaintiff and Putative Aggrieved Employees in order to increase Defendants' profits without concern for employee safety. Defendants' quotas required Plaintiff and Putative Aggrieved Employees, to meet quantified work and production targets and quotas relating to their warehouse duties.

30. **DEFENDANTS' Warehouse Employees are Covered Employees:** DEFENDANTS is a covered employer and maintains, implements, and enforces illegal quotas. Plaintiff and Putative Aggrieved Employees are subject to quotas and are protected by Labor Code section 2100(h) which states:

*"Quota" means a work standard under which an employee is assigned or required to perform at a specified productivity speed, or perform a quantified number of tasks, or to handle or produce a quantified amount of material, within a defined time period and under which the employee **may suffer an adverse employment action if they fail to complete the performance standard."***

(Emphasis added)

31. DEFENDANTS measures, analyzes, stores, evaluates and/or rates warehouse employees' performance based on employee work speed data and subsequently takes adverse action against them for failing to meet undisclosed quotas. Labor Code section 2100 states:

*(e)(1) "Employee work speed data" means information an employer collects, stores, analyzes, or interprets relating to an individual employee's performance of a quota, including, but not limited to, quantities of tasks*

-9-
FIRST AMENDED PAGA COMPLAINT                                    *WALMART*

*performed, quantities of items or materials handled or produced, rates or speeds of tasks performed, measurements or metrics of employee performance in relation to a quota, **and time categorized as performing tasks or not performing tasks.**(2) "Employee work speed data" does not include qualitative performance assessments, personnel records, or itemized wage statements pursuant to Section 226, except for any content of those records that includes employee work speed data as defined in this part."*

(emphasis added)

32.  Defendants store, track, and analyze employees' speed data to measure performance and take adverse employment action against employees in violation of Labor Code § 2102, which states:

**Section 2102 - Employees not required to meet improper quotas**

*An employee shall not be required to meet a quota that prevents compliance with meal or rest breaks, use of bathroom facilities, including reasonable travel time to and from bathroom facilities, or occupational health and safety laws in the Labor Code or division standards. An employer shall not take adverse employment action against an employee for failure to meet a quota that does not allow a worker to comply with meal and rest breaks, or occupational health and safety laws in the Labor Code or division standards, or for failure to meet a quota that has not been disclosed to the employee pursuant to Section 2101.*

33.  Plaintiff and Putative Aggrieved Employees, as alleged throughout this complaint, were required to meet excessive quotas.  DEFENDANTS could comply with the law by complying with the law and refuse to do so.  DEFENDANTS claim they do not have, maintain, implement, or require quotas of any of its warehouse employees.

34.  ***Defendants Changes Quotas Regularly and Fail to Disclose New Quotas:***  DEFENDANTS failed to advise and/or disclose to new hires the written

-10-
FIRST AMENDED PAGA COMPLAINT                                        *WALMART*

quota description as required by Labor Code section 2101. Moreover, DEFENDANTS changes their quotas regularly and failed to provide Plaintiff and Aggrieved employees with the written disclosure after each quota is updated or changed.

35. Plaintiff and warehouse employees in her department, for example, were required to meet a **production quota of at least 100 packages per hour**, regardless of the size or difficulty of the items. The size, volume, weight of the packages impacted employees ability to meet the quota. For example, during peak season such as year-end Holidays, the order flow increased as did the quota demands for all employees. On information and belief, in part because the standards and policies are uniform throughout Defendants' warehouses, all warehouse employees at different facilities in California were subject to the same or similar quota requirements.

36. When Plaintiff or warehouse employees fell behind on their quota, they were subjected to **increased supervision and warnings**, both verbal and written, with team leaders notifying employees that management would speak to them if quotas were not met. Team leads and Plaintiff's superiors regularly stated that failure to meet the quota was cause for termination .

37. On information and belief, Defendants implemented a point system which was designed to punish employees who failed to meet the quota requirements. On information and belief, Defendants targeted for termination the lowest quartile of warehouse works. On information and belief, Defendants records will demonstrate through maintenance and implementation of quota data base, reprimands, write ups, internal memos, and coding within employee files that warehouse employees performing below quota were reprimanded and/or terminated.

38. On information and belief, Defendants maintain a database and electronic information that measures productivity for individuals, warehouses throughout the country and specifically in California that establishes quotas for different facilities, departments, warehouse positions (picker, packer, stower,

shipping, receiving, wrapper, and so forth), and for specific tasks. For example, Defendants utilize devices such as scanners and GPS devices that track in real time the location of warehouse employees and whether they are productive each and every work minute. These systems are displayed in various ways which are not available to warehouse employees. Defendants tracking metrics are only available to supervisors, managers, and higher level employees. This information as well as other data is used to enforce unlawful quotas as alleged throughout this complaint. This information is then stored and analyzed

39. DEFENDANTS failed to disclose Plaintiff' quota after she demanded her written disclosures pursuant to Labor Code section 2104, which states:

> **Section 2104 - Employee requests for written descriptions**
>
> *(a)(1) If a current or former employee believes that meeting a quota caused a violation of their right to a meal or rest break or required them to violate any occupational health and safety laws in the Labor Code or division standards, they have the right to request, and the employer shall provide, a written description of each quota to which the employee is subject and a copy of the most recent 90 days of the employee's own personal work speed data.*
>
> *(a)(2) If a former employee requests a written description of the quotas to which they were subject and a copy of their own personal work speed data pursuant to paragraph (1), the employer shall provide 90 days of the former employee's quotas and personal work speed data for the 90 days prior to the date of the employee's separation from the employer.(3) A former employee is limited to one request pursuant to this subdivision.*
>
> *(b) An employer that receives a written or oral request for information pursuant to subdivision (a) shall comply with the request as soon as practicable, but no later than 21 calendar days from the date of the request.*

40. Plaintiff, through their Counsel of record, served on Defendants a demand for a written description of the quotas they were subject to. Defendants ignored their request. More than 21 days have passed since the request for a written description and Defendants refuse to comply with the law. As such, Plaintiff is forced to both file a lawsuit and/or file for injunctive relief for herself and on behalf of Aggrieved Employees.

41. ***Quotas Interfered with Employees' Use of Bathroom Facilities:*** Plaintiff and warehouse employees were restricted in their ability to use the bathroom facilities as a result of Defendants' unlawful quota requirements, as alleged herein and above. Employees were monitored by Defendants' leads and/or supervisors and were instructed to minimize the use of the bathroom facilities or were restricted to use bathroom facilities until the designated break time. As such, DEFENDANTS violated Labor Code sections 2100 *et. seq.* Defendants knew that Plaintiff and warehouse employees could not be required to engage in warehouse duties during the time they used the restroom facilities but nevertheless Defendants counted time to and from the restroom as well as time using the restroom as non-productive time which was impacted their quota negatively.

42. ***Illegal Quotas Created Safety/OSHA Risks and/or Increased Injury Rates:*** On information and belief, hundreds of employees have suffered quota related injuries. On information and belief, DEFENDANTS' unwritten policy, which is implemented through supervisors and managers, is to eliminate injured employees. While DEFENDANTS sometimes offers light duty positions and tasks the reality is injured employees were targeted for elimination for one well known reason: the perception and false belief that injured employees could not meet Defendants' illegal quotas. Ultimately, injured employees are categorized as unproductive employees and are terminated for "low performance."

43. ***Quotas Prevented Employees from Complying with California Meal & Rest Period Laws:*** Defendants knew that Plaintiff, Aggrieved Employees, and

-13-
FIRST AMENDED PAGA COMPLAINT                                      *WALMART*

Aggrieved Employees were entitled to receive legal meal periods. Defendants enacted quotas that prevented Plaintiff and Putative Aggrieved Employees from complying with California's meal period laws. During the PAGA Period, Plaintiff and Putative Aggrieved Employees regularly worked in excess of five (5) and/or 10 hours per workday.

44. Plaintiff and warehouse employees could not comply with California's meal and rest period laws. The excessive quotas prevented them from complying with meal and rest period laws. Plaintiff complained to her supervisors but to no avail. Defendants' agents such as team leads and supervisors witnessed Plaintiff and Warehouse Employees working through rest periods but did nothing. Plaintiff's meal periods were supposed to be interrupted and 30 minutes. However, as a result of the quota, her meal periods were interrupted as often as twice per week.

45. Plaintiff and Aggrieved Employees employees were monitored, reprimanded, and discouraged from taking meal periods. Employees were required under the penalty of reprimand or termination to clock in and out for meal periods. This ruse was implemented and required by DEFENDANTS for unlawful purposes. In reality, the unwritten meal period policy was to work through meal period or punished. If DEFENDANTS can demonstrate employees clocked in and out for lunch, then it can falsely argue that it did comply with California law in defending the many lawsuits accusing it of violating California breaks' laws. The reality was, is, and will continue to be that Defendants' quotas are excessive and can only be met if Plaintiff and Aggrieved Employees work through meal periods or take shortened meal periods.

46. **On Duty/On Call Breaks:** Defendants also violated Labor Code section 2103 because it required and continues to require on duty or on call breaks and routinely interrupted breaks. DEFENDANTS know when warehouse employees are working through breaks to meet quotas in violation of Labor Code § 2103 which states, "(***n***)*notwithstanding subdivision (a), consistent with existing law,*

*meal and rest breaks are not considered productive time unless the employee is required to remain on call. Ca. Lab. Code § 2103.*

47. Plaintiff and Putative Aggrieved Employees were regularly and routinely required to remain on call to meet quotas. Defendants required employees to regularly monitor quota statistics and receive and respond to messages when on breaks. Plaintiff often worked in excess of 10 hours shifts. Plaintiff and Aggrieved Employees' hours worked, and shift lengths were in part due to seasonality and the flow of orders.

48. Plaintiff **rarely had the opportunity to take her 15-minute breaks** due to excessive workload. Defendants policy was to provide 30 minutes meal periods, but supervisors regularly interrupted Plaintiff and Aggrieved Employees meal periods, sometimes daily.

49. ***Quotas Adversely Impacted Aggrieved Employees Right to Take Legal Rest Periods:*** Defendants knew that Plaintiff, Aggrieved Employees, and Aggrieved Employees were entitled to legal rest breaks. Defendants enacted quotas that prevented Plaintiff and Putative Aggrieved Employees from complying with California rest period laws.

50. On information and belief, DEFENDANTS take adverse employment action against employees who choose and/or insist on a legal rest break. Aggrieved Employees were monitored, reprimanded, and discouraged from using bathroom facilities until their designated time for rest breaks. However, this policy and practice was implemented and encouraged by DEFENDANTS' supervisory and/or managerial personnel such that if Aggrieved Employees worked through rest break or took shortened rest breaks, they could meet Defendants' quota requirements.

51. Defendants also implemented an illegal policy requiring Plaintiff and Putative Aggrieved Employees to "waive" meal periods. Plaintiff and Putative Aggrieved Employees were required to sign meal period waivers when in fact many employees did not want to sign waivers because they wanted a break. Plaintiff and,

-15-

on information and belief, many Aggrieved Employees also complained about Defendants' unlawful breaks policies, as evidenced by the dozens of lawsuits for breaks violations, and faced retaliation and termination in violation of Labor Code section 2105 which states:

> ### Section 2105 - Rebuttable presumption of unlawful retaliation for adverse action against employees; conditions
>
> *For purposes of this part, there shall be a rebuttable presumption of unlawful retaliation if an employer in any manner discriminates, retaliates, or takes any adverse action against any employee within 90 days of the employee doing either of the following:*
>
> *(a) Initiating the employee's first request in a calendar year for information about a quota or personal work speed data pursuant to subdivision (a) of Section 2104.*
>
> *(b) Making a complaint related to a quota alleging any violation of Sections 2101 to 2104, inclusive, to the commissioner, the division, other local or state governmental agency, or the employer.*

52. **Injunctive Relief:** Plaintiff and Putative Aggrieved Employees were and continue to labor under the constant threat of Defendants' adverse employment action in violation of Labor Code §§ 2100 *et. seq.*

53. Defendants knew or should have known that their quotas were and continued to be illegal. Defendants new and know their quotas require Plaintiff and Putative Aggrieved Employees to expose themselves to OSHA hazards and other safety hazards. Defendants have been sued many times for violating California's wage and hour laws. Despite prior, current and future litigation, Defendants will

continue to violate California's quota laws absent a jury award in Plaintiff and Aggrieved Employees favor

54.     Plaintiff, Aggrieved Employees, and Aggrieved Employees are entitled to injunctive relief under California Labor Code section 2108, compelling Defendants to comply with California Labor Code sections 2100 et. seq., and seek the recovery of attorneys' fees and costs incurred in obtaining this injunctive relief.

55.     Plaintiff worked at Defendants' Chino E-commerce warehouse as a Packer. There were four shifts at the warehouse. Plaintiff regularly worked overtime, and often as much as 12 hours per shift. When she was hired, she was informed she was expected to "acclimate" in a week or less and was expected to meet her quota demands immediately.  She was also informed she would be paid a bonus based on her quota productivity. Plaintiff started her shift at 7 a.m.  She would arrive dressed for work, clock in and immediately start her daily tasks at a workstation which was set up with a monitor, scan gun, and other tools and devices that were programmed to measure her quota metrics.

56.     Plaintiff would pick items from a "cubby" and package them.  The stations for packers were uniform, each station was set up the same. She and other packers had to package approximately 100 items per hour. In her department there were packers and "putters." The size of the items they had to pick and package varied. Plaintiff and Aggrieved Employees referred to computers, monitors, and other digital devices what posted their quota metrics and to ensure they meet their quota.  Monitors were installed directly in front of warehouse employees' workstations so that they would see their quota metrics.  Additionally, supervisors became more actively in communicating with them that they were not hitting their numbers despite not disclosing to them what the "numbers" meant.  Every station had a scanner, and it was programmed to measure productivity, including recording negative inferences.

//

//

# FIRST CAUSE OF ACTION

## ENFORCEMENT OF THE PRIVATE ATTORNEYS GENERAL ACT

### (Plaintiff and Aggrieved Employees Against all Defendant)

57. Plaintiff hereby re-allegess and incorporate by reference all paragraphs above as though fully set forth herein.

58. Under Labor Code section 2699.3(a), a plaintiff may bring a cause of action under PAGA only after giving the LWDA and the employer notice of the Labor Code sections alleged to have been violated.

59. Plaintiff gave written notice of the specified provisions alleged to have been violated, including the facts and theories to support the alleged violations, as required by Labor Code section 2699.3. This written notice was provided via certified mail to Defendants and to the LWDA by electronically filing the notice via the Department of Industrial Relations' website on September 20, 2024 ([LWDA-CM-1051679-24](#)).

60. Pursuant to Labor Code section 2699(a), any provision of the Labor Code that provides for a civil penalty to be assessed and collected by the LWDA or any of its departments, divisions, commissions, boards, agencies or employees for violation of the code may, as an alternative, be recovered through a civil action brought by an Aggrieved Employees on behalf of themselves and other current or former employees pursuant to the procedures specified in Labor Code section 2699.3.

61. For all provisions of the Labor Code except those for which a civil penalty is specifically provided, Labor Code section 2699(f) imposes upon Defendants a penalty of one hundred dollars ($100.00) for each Aggrieved Employees per pay period for the initial violation and two hundred dollars ($200.00) for each Aggrieved Employees per pay period for each subsequent pay period in which Defendants violated these provisions of the Labor Code.

62. Defendants' conduct violates numerous Labor Code sections, including, but not limited to, the following:

a) Violations of Labor Code §§ 2100 - 2112;

63. As set forth above, Defendants have violated numerous provisions of the Labor Code §§ 2100 *et. seq*.

64. Plaintiff are "Aggrieved Employees" because she was employed by the alleged violators and had one or more of the alleged violations committed against him, and therefore is properly suited to represent the interests of all other Aggrieved Employees.

65. Plaintiff have exhausted the procedural requirements under Labor Code section 2699.3 as to Defendants and are therefore able to pursue a claim for penalties on behalf of themselves and all other Aggrieved Employees under PAGA.

66. Pursuant to Labor Code sections 2699(a), 2699.3 and 2699.5, Plaintiff are entitled to recover civil penalties, in addition to other remedies, for violations of the Labor Code sections cited above and alleged throughout this Complaint.

67. For bringing this action, Plaintiff are entitled to attorney's fees and costs incurred herein.

## **PRAYER FOR RELIEF**

Plaintiff prays for relief and judgment against Defendant as follows:

a. For PAGA Penalties, civil penalties pursuant to 2698, *et seq.*;
b. For recovery of attorneys' fees and costs provided by Labor Code section pursuant to Code of Civil Procedure section 1021.5, 2100 et. seq., and 2699 *et. seq.*;
c. For injunctive relief pursuant to Labor Code §§ 2100 *et. seq.*; and,
d. For such other relief as the Court deems just and proper.

//
//
//
//
//

-19-
FIRST AMENDED PAGA COMPLAINT                              *WALMART*

Dated: March 31, 2025              **THE WHEELER LAW FIRM**

                                                  **&**

                                         **JOSE GARAY APLC**


                                   By:   */s/ Jose R. Garay*
                                         Scott E. Wheeler
                                         Jose Garay
                                         Attorneys for Plaintiff


## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: March 31, 2025              **THE WHEELER LAW FIRM**

                                                  **&**

                                         **JOSE GARAY APLC**


                                   By:   */s/ Jose R. Garay*
                                         Scott E. Wheeler
                                         Jose Garay
                                         Attorneys for Plaintiff